## Henry W. Putnam *vs.* Josiah H. Gunning.

Suffolk. November 21, 1894. — January 2, 1895.

Present: Field, C. J., Allen, Holmes, Knowlton, & Barker, JJ.

*Beneficiary Association — Evidence — Wrongful Receipt of Funds by Officer of Corporation — Fraud.*

In an action by the receiver of a fraternal beneficiary association incorporated under St. 1888, c. 429, as amended by St. 1890, c. 341, to recover money alleged to have been wrongfully taken by the defendant from the funds of the corporation while a director thereof, documents and papers on which appear the signature or initials of the defendant in his own handwriting, wherein he is referred to as holding a certain office, are admissible in evidence to show that he was such an officer of the corporation.

In an action by the receiver of a fraternal beneficiary association incorporated under St. 1888, c. 429, as amended by St. 1890, c. 341, to recover money alleged to have been wrongfully taken by the defendant from the funds of the corporation while a director thereof, an extract from a pamphlet is competent evidence, in connection with testimony that thousands of the pamphlets were being issued from the office of the corporation while the defendant was holding a certain office and afterwards, to show that he knew, as stated in such extract, that the reserve fund was held out to the members of the corporation and to the public as a trust fund for the payment of matured certificates, and that it could not be appropriated to any other use, and also to show that in like manner the proceeds of the monthly *per capita* tax and of the assessments were all to be deposited in securities with the Treasurer of the Commonwealth or held as a part of the reserve fund.

In an action by the receiver of a fraternal beneficiary association incorporated under St. 1888, c. 429, as amended by St. 1890, c. 341, to recover money alleged to have been wrongfully taken by the defendant from the funds of the corporation while a director thereof, there was evidence that the semiannual *per capita* taxes for payment of expenses were sent directly to the secretary general of the corporation, and did not go to the treasurer general; and it appeared that the defendant received his payments through the treasurer general. *Held*, that, while the evidence in regard to the fund from which the payments of the money which the plaintiff sought to recover were made was not direct and clear, the jury might fairly infer that it was the reserve fund.

At the trial of an action by the receiver of a fraternal beneficiary association incorporated under St. 1888, c. 429, as amended by St. 1890, c. 341, to recover $1,500 alleged to have been wrongfully taken by the defendant from the funds of the corporation while a director thereof, there was evidence that he was an officer of the corporation for two years from its organization; that he was a director, and received his salary as such up to the time of the receivership; that on a certain day he made a contract with the corporation to continue for eighteen months from that date to promote the growth and well being of the corporation in certain States, in such form and manner as he should be directed from time to

time by certain officers of the corporation, at an annual salary of $1,500, to be paid him by the corporation; that on a certain day he received $500 from the corporation before any part of this salary had become due, and at the time of the payment, when asked by the bookkeeper what it was for, replied that "he would tell him what it was for at some future time," and that he said "he was in a tight place and had got to use the money"; that about three weeks later he received $500, which he receipted for on account of salary, and two months afterwards he received $500 more; that there had previously been talk by the defendant, or by other officers of the corporation in his presence, as to the likelihood of the corporation being stopped very soon; and that a fund of $10,000 had been set apart by the directors two or three months before for the purpose of perpetuating and defending the corporation. There was also evidence tending to show that the defendant did little or nothing under his contract; and that the payments, by direction of the principal officer, had been charged up to a certain publication as for services of the defendant as editor and publisher. The defendant afterwards told the bookkeeper that the entry on the books should be changed, as the money was paid to him not for the publication, but for lecturing for the corporation and promoting its interest. All this time his salary as director was paid to him separately, and he was preaching regularly on Sundays at a church in another State. The defendant did not testify, nor offer any explanation of these matters. *Held*, that the case was rightly submitted to the jury.

CONTRACT, by the receiver of the Supreme Lodge American Protective League, a fraternal beneficiary association incorporated under St. 1888, c. 429, as amended by St. 1890, c. 341, to recover $1,500 alleged to have been illegally and fraudulently taken by the defendant from the funds of the corporation while a director thereof. At the trial in the Superior Court, before *Maynard*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*F. Hutchinson*, for the defendant.

*H. W. Putnam*, (*W. H. Brown* with him,) *pro se.*

KNOWLTON, J. Many documents and papers were introduced in evidence on which appeared the signature or initials of the defendant in his own handwriting, wherein he was referred to as governor general, or director, or member of the committee on finance of the American Protective League, the corporation of which the plaintiff is receiver. These were objected to by the defendant. They were admitted to show that during all the time from its organization he was acting for the corporation, and was familiar with its business, and also as evidence that he was an officer of the corporation, at least *de facto*. In this way the plaintiff also sought to connect him with the issuing of the

pamphlet "Live to Win," of which great numbers were being issued during all the time that the corporation was doing business. The evidence was clearly competent. The defendant's own acts and declarations can be proved against him to show that he was an officer of a corporation, as well as for any other purpose. 1 Greenl. Ev. § 195, and cases cited. *Smith* v. *Palmer*, 6 Cush. 513. *Loomis* v. *Wadhams*, 8 Gray, 557. *Topping* v. *Bickford*, 4 Allen, 120. *Commonwealth* v. *Kane*, 108 Mass. 423. *Commonwealth* v. *Tobin*, 108 Mass. 426. The extract from the pamphlet "Live to Win" was competent evidence,* in connection with the testimony that thousands of these pamphlets were being issued from the office of the corporation while the defendant was governor general and afterwards, to show that he knew the reserve fund was held out to the members of the corporation and to the public as a trust fund for the payment of matured certificates, and that it could not be appropriated to any other use, and also to show that in like manner the proceeds of the monthly *per capita* tax and of the assessments were all to be deposited in securities with the Treasurer of the Commonwealth, or held as a part of the reserve fund. See St. 1890, c. 341, § 1. The evidence in regard to the fund from which the payments of the amounts which the plaintiff seeks to recover were made is not direct and clear, but the jury might fairly infer that it was the reserve fund. There was testimony that the semiannual *per capita* taxes for payment of expenses were sent directly to the secretary general, and did not go to the treasurer general; and it appeared that the defendant received his payments through the treasurer general.

---

* The material portion of this extract was as follows:

"Reserve Fund. At least fifty per cent of the *per capita* tax and assessments is invested in proper securities, as the law directs, and deposited in trust with the Treasurer of Massachusetts, to be used only for the payment of matured certificates. The balance will be used to pay sick and accident benefits, and the surplus will be covered into the reserve fund. These benefits are constant payments on account, and are thus constantly lessening final liabilities.

"No portion of the reserve fund can be drawn except upon requisition, signed by three fourths of the executive committee and indorsed by the insurance commissioner of the State, setting forth that the same is to be used only for the purpose of the trust, namely, the payment of maturing certificates."

The defendant contends that there was no evidence that he received the money wrongfully or in fraud of the corporation. There was evidence that he was governor general of the corporation from its organization in June, 1889, until June, 1891; that he was a director, and received his salary as director up to the time of the receivership; that on January 1, 1892, he made a contract with the corporation to continue for eighteen months from that date to promote the growth and well being of the order in the States of New York and New Jersey, in such form and manner as should be directed from time to time by the governor general or the secretary general, at a salary of fifteen hundred dollars per year, to be paid him by the corporation; that on March 23, 1892, he received five hundred dollars from the corporation before any part of this salary had become due, and at the time of the payment, when asked by the bookkeeper what it was for, replied that " he would tell him what it was for at some future time "; that he said " he was in a tight place, and had got to use the money "; and that afterwards, on April 14, he received five hundred dollars, which he receipted for on account of salary, and again on June 14 he received five hundred dollars more.  It was also in evidence that there had previously been talk by the defendant, or by other officers of the league in his presence, as to the likelihood of the league being stopped very soon, and that a fund of $10,000 had been set apart by the directors two or three months before for the purpose of perpetuating the league and defending it.  There was also evidence tending to show that he did little or nothing under his contract, and that the payments by direction of the governor general had been charged up to the " Endowment Review," as for services of the defendant as editor and publisher.  The defendant afterwards told the bookkeeper that the entry on the books should be changed, as the money was paid to him, not for the " Endowment Review," but for lecturing for the league and promoting its interest.  All this time his salary of $125 per quarter as director was paid to him separately, and he was preaching regularly on Sundays at a church in another State.  The defendant did not testify nor offer any explanation of these matters.  We are of opinion that this testimony, in connection with the other evidence in the case, was proper for the consideration

of the jury on the question whether the defendant did not, while a director of the company, connive with the other managing officers to obtain money of the corporation without consideration and against right. The facts established by the witnesses, especially when taken in connection with the defendant's failure to testify, open a wide field for legitimate inferences against one who had long been a prominent officer of a corporation which can now make but small returns to those who invested their money in it. We are of opinion that the presiding justice was right in submitting the case to the jury.

*Exceptions overruled.*